b j (1)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

2004 SEP -1  P 5: 02

| | | |
|---|---|---|
| JOHN KELLY and | : | Civil Action No. |
| JAMES KELLY | : | 3:02 CV 01120 (PCD) |
| Plaintiffs, | : | NEW HAVEN, C..... |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| Defendant, | : | SEPTEMBER 1, 2004 |

**DEFENDANT'S**
**OBJECTIONS TO**
**PLAINTIFFS' PROPOSED OPENING STATEMENT TO THE JURY**

Undersigned counsel for the defendant respectfully objects to certain portions of the Plaintiffs' Proposed Opening Statement To The Jury because of what we believe are the narrow issues posed by this lawsuit.      I am appending hereto a copy of the Plaintiff's Proposed Opening Statement To The Jury and crossing-off the numerous portions to which we object, for the reasons indicated below.

We begin with a statement of what we believe are the narrow issues posed by this lawsuit.   This will establish the overall background for our discussion of the several specific portions of Plaintiffs' Proposed Opening Statement To The Jury to which we object.

**The instant lawsuit.** The instant lawsuit alleges that the defendant Melvin Wearing, Chief of Police of the City of New Haven at the time of the events at issue, refused to recommend the two plaintiff New Haven Police Sergeants, John Kelly and James Kelly, for promotion to Lieutenant from New Haven Civil Service Eligibility List No. 00-16 in June 2002 in retaliation for the plaintiffs having earlier (A) filed a State

**ORAL ARGUMENT IS REQUESTED**
**TESTIMONY IS NOT REQUIRE**

Court lawsuit claiming that the City of New Haven, the members of the Board of Police Commissioners, Chief Wearing and the Director of Personnel had violated the City Charter and City Civil Service Rules and Regulations by considering more than three individuals on the eligibility list per each vacant position and by "rounding" the scores on that civil service examination, and (B) having obtained on June 11, 2002 a temporary injunction temporarily preventing the defendants in the State Court case from promoting to the rank of Lieutenant any more eligible persons "unless, utilizing the Rule of Three, they select from the top three scoring individuals," effectively scoring without "rounding" and requiring that if promotions were to be made only three applicants could be considered per vacant position.

That State case is Kelly, et al. v. City of New Haven, et al., Superior Court, Judicial District of New Haven, At New Haven, Docket No. CV00-0444614.

This lawsuit thus alleges a violation of the First Amendment to the Constitution of the United States and Title 42, United States Code, Section 1983, and Article First, Section 8 of the Constitution of the State of Connecticut.

Chief Wearing is now retired.   There has also been a subsequent ruling on the merits of that State Court lawsuit, and an appeal is pending.   The two Kelly's are not related.

**The related State lawsuit.**    The earlier State lawsuit, brought by four Caucasian New Haven Police Sergeants including the two Kelly's, was filed on or about October 27, 2000, and alleged that (A) the City of New Haven, the members of the Board of Police Commissioners, Chief Wearing and the Director of Personnel had

violated the City Charter and City Civil Service Rules and Regulations by "rounding" the scores on that civil service examination, and (B) the motivation for doing so was to enable then Chief Wearing and the other defendants to distort the use of the so-called civil service "Rule of Three" in order to skip over persons such as the Caucasian plaintiffs in favor of African-Americans on the civil service eligibility promotion list.

The Chief is an African-American and as Chief of Police made the recommendations of those who were to be promoted by the Board of Police Commissioners from the civil service eligibility list.

Some of the persons promoted from the applicable civil service eligibility list had scored higher than one or both of the Kelly's, and some had scored lower, but the "Rule of Three" allows persons who scored higher on the eligibility list to be skipped over in certain circumstances.

**The grant of the temporary injunction.** A motion for Temporary Injunction was filed after then Chief Wearing had recommended in writing that the Board of Police Commissioners promote two more persons, other than the instant plaintiffs, for promotion to Lieutenant shortly before the same Lieutenants civil service eligibility list expired on June 20, 2002. One of the intended promotees was a Caucasian male and the other an African-American female.

As a result of the motion for temporary injunction and a hearing in that State lawsuit the Hon. Lynda B. Munro on June 11, 2002 issued a Memorandum of Decision (copy provided to this Court) temporarily enjoining the defendants in the State Court case from promoting to the rank of Lieutenant any more eligible persons "unless,

-3-

utilizing the Rule of Three, they select from the top three scoring individuals," effectively scoring without "rounding" and requiring that if promotions were to be made only three applicants could be considered per vacant position.

The defendants offered no evidence on the issue of race at the hearing on the motion for temporary injunction and chose not to litigate that issue of discrimination at that point.

Judge Munro's ruling made no findings regarding the contention of racial motivation, and she did not specify who should be promoted to Lieutenant from the list.

Accordingly, the Chief then recommended only one person, i.e., the same Caucasian male he had previously recommended, and that person's promotion was approved by the Board of Police Commissioners.

**Retaliation claim in this lawsuit.**  The two Kelly's each claim in this lawsuit that the Chief's failure to recommend him to that single last vacancy was motivated by a desire to retaliate against each of them for having filed the State Court lawsuit and for seeking and obtaining the temporary injunction.

**Specific Objections to Plaintiffs' Proposed Opening Statement.**  As indicated in the accompanying "marked-up" copy of Plaintiffs' Proposed Opening Statement, we object to references to (A) alleged racial motives or discrimination, (B) characterization as to whether or not the plaintiff's were "well qualified" other than that they had passed the relevant civil service promotion eligibility list, and (C) certain references that will depend on whether or not this Court grants our Motion to Set

Aside Default and Default Judgment.

**Caveat.** The foregoing argument applies whether the Court requires that we submit to a hearing in damages now <u>or</u> agrees to set aside the default and default judgment and allow trial on the merits.

Respectfully submitted,

_Martin S. Echter_

Martin S. Echter
Deputy Corporation Counsel
165 Church Street
New Haven, CT 06510
Phone: (203) 946-7958
Fax: (203) 946-7942
Federal Bar No. ct 07596
**Pager: 1-860-590-4432**

<u>Certificate of Service</u>

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and HAND-DELIVERED to Attorney Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, CT 06510, this /s/ day of September, 2004.

_Martin S. Echter_

Martin S. Echter

-5-

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN KELLY AND
JAMES KELLY

Plaintiffs,

V.

MELVIN WEARING,

Defendant

CIVIL NO.  3:02CV1120 (PCD)

:
:
:
:
:
:
:
:
:    August 27, 2004
:

*We propose substituting Defendants' Proposed Opening Statement.*

## PLAINTIFFS' PROPOSED OPENING STATEMENT TO JURORS

In this case, the plaintiffs John P. Kelly and James Kelly, are Sergeants in the New Haven Police Department.  In this civil rights action, the plaintiffs allege that their civil and constitutional rights were violated when New Haven Police Chief Melvin Wearing ~~denied both~~ *passed over them for* ~~of them~~ *both for* promotions to the rank of Lieutenant although both were well qualified and were on a civil service eligibility list for those promotions.  Both plaintiffs competed in civil service examinations to determine their qualifications for promotion pursuant to the merit system established by the Charter of the City of New Haven.  Both did well in the examinations and, pursuant to the Charter and the Rules and Regulations of the City's Civil Service Board, were ~~ranked as eligible for these promotions.~~

The plaintiffs had previously brought a civil action in the state court against Chief Wearing and other city officials in which the plaintiffs alleged that Chief Wearing was violating

*[handwritten top margin:] when Chief Wearing announced that he was recommending two persons other than the plaintiffs for promotions)*

the City Charter in the manner in which he promoted police officers and further, that Chief Wearing was unlawfully handing out promotions to less qualified and lower-ranked candidates based on race.

~~The plaintiffs were successful in the state court in gaining relief against the defendant's practices after an evidentiary hearing, a Superior Court Judge found that Chief Wearing and the other named defendants did in fact violate the city charter by skipping over higher-ranked candidates and promoting lower-ranked candidates.~~ *[handwritten: Early in that case, U]* ~~Upon such a finding the superior court judge~~ issued a temporary injunction against Chief Wearing ~~and~~ the City of New Haven, the effect of which was to prevent Chief Wearing from proceeding to promote a lower-ranked candidate, which was his intention at that time. Chief Wearing was further required by this court's order to consider both John P. Kelly and James Kelly for promotion as required by the city charter.

*[handwritten left margin: The Board of Police Commissioners and the City Director of Personnel. However, that ruling did not require that any particular person be promoted. Chief Wearing then promoted one of the two persons he had previously stated he was recommending.]*

Immediately after the state court injunction issued, Chief Wearing had the opportunity to effect the promotion of both John P. Kelly and James Kelly. He refused to promote either one of them, and, it is alleged, Chief Wearing made a statement that he would leave a Lieutenant position vacant before he would give a promotion to either plaintiff. *[handwritten: To be included only if the Court denies Def.'s Motion to Set Aside Default & Default Judgment]*

~~In this case before you, there were previous proceedings, which resulted in a judgment in favor of the plaintiffs John P. Kelly and James Kelly and against the defendant Melvin Wearing on the allegations in this federal complaint.~~ In this federal complaint, the plaintiffs alleged that in refusing to act to promote them, the defendant retaliated against them for having brought the previous state court action against him and their success in gaining a temporary

injunction against the defendant. In this case, plaintiffs also alleged that their allegations that

Melvin Wearing was engaged in unlawful conduct as alleged in their state court lawsuit

constituted speech on a matter of public concern which was protected by the First Amendment

to the United States Constitution. Thus, plaintiffs claimed by refusing to promote them, Melvin

Wearing retaliated against them for engaging in such protected speech and thus violated their

federal constitutional rights.

*To be included only if the Court denies Defendant's Motion to Set Aside Default and Default Judgment*

You are hereby instructed that plaintiffs have prevailed in these allegations against

defendant Wearing. Therefore, you as jurors will not be deciding whether these allegations are

true for that has already been decided. Instead, your roles as jurors in this proceeding is to decide

what damages should be awarded to the plaintiffs to compensate them for *any* injuries suffered

on account of the violations of their constitutional rights and the denial to them of the promotion

to which there were entitled.

The evidence that you will hear in this trial, therefore, will be limited to the issue of the

financial and other damage suffered by these plaintiffs and it will be your role to hear and

consider this evidence and render an appropriate ~~award of compensatory damages~~ *verdict*. and, if you

find it appropriate, an award ~~of punitive~~ damages. After the conclusion of the evidence I will

instruct you as to the law applicable ~~to such awards~~ and the guidelines that you should employ

in making these decisions.

RESPECTFULLY SUBMITTED,
THE PLAINTIFFS

BY: _____

KAREN LEE TORRE
ct#01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT 06510
(203) 865-5541

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed this 27th day of August, 2004, Martin S. Echter, Esq., Deputy Corporation Counsel, Office of the Corporation Counsel, 165 Church Street, New Haven, Connecticut 06510.

_____

Karen Lee Torre

CVOO O444614                    :             SUPERIOR COURT

JOHN KELLY, ET AL              :             J.D. OF NEW HAVEN

V.                              :             AT NEW HAVEN

CITY OF NEW HAVEN, ET AL    :             JUNE 11, 2002

<u>Memorandum of Decision</u>

Before the court is an application for temporary injunction, brought by the plaintiffs James

W. Kelly and John P. Kelly[1]. They are both police officers in the City of New Haven. They seek

a temporary injunction enjoining the defendants, City of New Haven, Melvin Wearing, the Chief

of Police in New Haven, Tina Burgett, the City's Human Resources Director and the Board of Police

Commissioners and each of its members [all collectively referred to as the "City" hereinafter], from

going forward with promotions that they claim are illegal, in violation of the Charter of the City of

New Haven.

The matter originally came to court on or about October 27, 2000, when all of the named

plaintiffs sought an ex parte injunction to block the impending promotion of 18 sergeants off the

lieutenant eligibility list. No ex parte relief was granted. When the matter was in court for a

hearing, those promotions had already occurred. The parties entered into an agreement which

provided that the City would give the plaintiffs three weeks notice of impending promotions. Such

notice was given and the plaintiffs James W. Kelly and John P. Kelly have therefore brought their

application for temporary injunction to the court. On May 20, 2002, a hearing was held on the

---

[1]

There are two other plaintiffs, Aaron Sweeney and Rebecca Sweeney-Burns who are not seeking the relief
sought by the two Kelly plaintiffs in the application currently before the Court.

plaintiff's application for temporary injunction.

The court finds the following facts from the evidence introduced at the hearing.

The City of New Haven, in its Charter and by ordinance, makes provision that the promotion of police officers (among other of its employees) be accomplished in accordance with civil service provisions. A civil service exam was held for the position of lieutenant on April 10, 2000 and May 17, 2000. The promotional list, that is the certified list of those who passed the exam was subsequently posted; it expires on June 20, 2002. Thereafter, in order for there to be further promotions to lieutenant, a new civil service exam would have to be held. The promotions off of the certified civil service exam are to be made by the Board of Police Commissioners, which receives the recommendations of the Chief of Police.

On the exam at issue, the scores of the candidates were rounded to the nearest whole number. Exam scores above .5 were rounded up; exam scores at .5 and below were rounded down. A review of the actual scores, without rounding, discloses that there were no ties between candidates. Once the scores were rounded, there were numerous ties. It is not clear when this rounding practice commenced. The evidence discloses that there was no rounding in 1990 but that on a March, 1994 eligibility list, rounding had commenced. In practice, once the City rounds the scores, it treats all scores rounded to the same score as equal and treats all the candidates who have that score as being of one rank. For instance, in the exam at issue, the plaintiffs before the court each had their score rounded by the City to 83, as did several other candidates. The effect is that the plaintiffs were two among four candidates at rank 7. The certified eligibility list at issue has seventeen ranks among 36 candidates, none of whom actually achieved the same score on the civil service examination. The

2

ranking runs from one to seventeen, such that, for example, the individual at rank one scored higher than those in succeeding ranks.

From the certified eligibility list, the City of New Haven Charter provides, "[w]henever said board shall have adopted rules relative to the appointment or promotion of any class of officials, no appointments or promotions within such class shall be made **except from those applicants with the three highest scores** of those who shall be passed the examination with a score of at least seventy percentum and have received a certificate to that effect from said board . . . . (emphasis added)." (Sec. 160). The City has construed this provision to mean that it can select from the three highest ranks, explaining that each rank is a separate score.

This practice of selecting those who shall be promoted from the three highest ranks has meant that an individual who did not have one of the three highest scores can be selected for the promotion. It is this practice that is challenged by the plaintiffs in this application for temporary injunction. Presently, the Chief of Police, Melvin Wearing has announced his intention to submit for preemption the names of Sgt. Joseph Streeto and Sgt. Diane Langston.

As a result of previous rounds of promotions (with reference to Exhibit B) off of the eligibility roster, every candidate ranked above the two plaintiffs Kelly have been promoted, except Sgt. Edward Kendal. Sgt Kendall has retired. Therefore, as the list presently stands the eligible candidates are in the following listed order and rank as assigned to them, plaintiff Sgt. James W. Kelly at rank 7, Plaintiff Sgt. James P. Kelly at rank 7, Sgt. Kevin J. Emery at rank 11, Sgt. Diane

3

Street at rank 11 and Sgt. Joseph Streeto at rank 11.[2]  The plaintiffs claim that the intended promotion of Streeto and Langston will violate the City Charter and therefore should be enjoined.

The Defendants assert that these intended promotions are in accord with a proper application of the Rule of Three under the City Charter. The relief that the plaintiffs are seeking is an injunction preventing the defendants from applying this construction of the Rule of Three to the next two proposed promotions. The Plaintiffs are aware that they are not entitled to a court order granting either of them a promotion. It is their goal to be fairly considered for promotion; This can only be achieved, they argue, under what they perceive to be a proper reading of the Charter. If the Rule of Three is meant to allow the three highest scoring individuals to be considered for promotion, then the plaintiffs argue that the first promotion must go to either one of them or Langston. If Langston is selected, as one would assume since her name is being submitted for promotion presently, then the second promotion must go to either one of the two Kelly plaintiffs or Kevin J. Emery. It is their prayer for relief that an injunction be issued to prevent the defendants from issuing promotions that do not fairly consider the three highest scoring individuals.

I. Law and Discussion

The elements that the plaintiffs must satisfy to be successful in an application for temporary injunction are well settled. "The party seeking injunctive relief must first demonstrate that: (1) he has no adequate legal remedy; (2) he would suffer irreparable injury absent a stay; (3) he is likely

---

2

  All of the candidates on the list from Hassett to Blanchard, from ranks 8, 9 and 10, were previously promoted. To reach Hassett through Blanchard, the appointing authority had to go around Kendall and both Kelly's. If the Rule of Three had been applied to the three highest individual's scores and Kendall had not yet retired, not all of these individuals would have been promoted.

4

to prevail on the merits; and (4) the balance of the equities favors granting relief." Waterbury

Teachers Assn. v. Freedom of Information Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994).

The first two elements recited above are easily met by the plaintiffs. If injunctive relief is

not granted, the defendants will in all likelihood proceed with their plans for the promotions of

Langston and Streeto. It will mean that in considering one of these promotions, they will have had

to embrace their notion that the Rule of Three means the selection from among the three highest

ranks, not the three highest ranked individuals. Absent the court, at a later date, revoking

promotions, an even more extreme injunctive remedy, there is no remedy for failure to being fairly

considered, that is, being considered under the interpretation of the Rule of Three as the plaintiffs

assert it should be construed. There is no adequate remedy for the plaintiffs to achieve this fair

consideration for promotion other than to ask a court to order the defendants to do so. Money

damages are not available. The prospective loss of not fairly being considered for promotion can

not be compensated for in money terms. Therefore, if the plaintiffs are likely to prevail on the

merits and if the equities favor the granting of relief, equitable relief would be the only remedy

appropriate.

A. Likelihood of success on the merits

The plaintiffs and the defendants agree that the interpretation of the language of the Charter

that provides, "no...promotions shall be made except from those applicants with the three highest

scores" is the pivotal issue in this matter. The court must in construing this language consider its

plain language.

"A fundamental tenet of statutory construction is that statutes are to be considered to give
effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.)

5

*Bridgeport Firefighters Assn. v. City of Bridgeport, 48 Conn. App., 667, 670, (1998); see Murchison v. Civil Service Commission, 234 Conn. 35, 45, 660 A.2d 850 (1995).* "In seeking to discern that intent, we look to the words of the statute itself. . . " (Internal quotation marks omitted.) Id. "When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance. . . Where there is ambiguity in the statute, however, we ascertain the actual intent by looking to the language of the statute itself, its legislative history, the circumstances surrounding its enactment and its purpose"; *Bridgeport Firefighters Assn. v. City of Bridgeport, supra, 48 Conn. App. 670;* as well as "to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) *Murchison v. Civil Service Commission of the City of Waterbury, supra, 234 Conn. 45.* When promotions in office or public situation are "regulated by law, all promotions must be made in accordance with that law. . . Such provisions exist where a merit system has been established in the municipal service. . . When such rules exist, promotions must be made in accordance with them, otherwise they are invalid." 3 *E. McQuillin, Municipal Corporations (3d Ed. Rev. 1990) § 12.131, p. 598.* "*The* trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) *Gorman Construction Co. Inc. v. Planning & Zoning Commission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994).* The trial court reviews the commission's action "only to determine whether it was unreasonable, arbitrary or illegal." *Schwartz v. Planning & Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).* In seeking injunctive relief, therefore, the plaintiff bears the burden of demonstrating that the town, by the actions of the board of police commissioners, acted improperly. *Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988).* International BOP v. Town of Windsor Locks, 1998 Ct. Sup. 11153, 11158-9(1998).

In considering the meaning of the language, the court must first consider it within the context of the statutory mandates. The Legislature has established the authority for the institution and application of civil service by municipalities. The enabling authority for the Rule of Three is found here:

Sec. 7-414. Classified service; eligible list; promotion.

The board shall, from the returns or reports of the tests, prepare a register or eligible list, for each grade or class of positions in the classified service, of the persons who attain such minimum mark as may be fixed by the board for any part of such test as fixed by the rules of such board and who are otherwise eligible.

6

Such persons shall take rank as candidates upon such register or list in the order of their relative excellence as determined by test, without reference to priority of time of test. The board shall provide by its rules for promotions in such classified service on a basis of ascertained merit in service, seniority in service and special test. **The board shall submit to the appointing power for each promotion the names of not more than three applicants having the highest rating.** The method of testing and the rules governing the same and the method of certifying shall, as far as possible, be the same as provided for applicants for original appointment. (1949 Rev., S. 876.) (Emphasis added.)

The statute contemplates a Rule of Three selecting the three individuals with the highest rating, having in order of their relative excellence as determined by the test. The Charter language speaks of the three highest scores. The City argues that the language the Charter, which replaced language that stated, "those applicants, not exceeding three, who shall stand highest on the list." particularly in light of discussions reflected in the minutes of the Charter Commission, reflects an intent to consider the scores as ranked, not the individual scores.

The court must consider this argument in the context of the exam process at the time. In 1991, when the Charter Revision Commission was meeting it does not appear that civil service examination results were rounded. The evidence presented discloses that in 1990 examination results were not rounded. The defendants offered into evidence an exhibit showing rounding occurred as early as 1994. Therefore, the court infers that when the Charter amendments were considered in 1991 (which eventually led to their passage and effective date some time in 1993), the exam results were not rounded. Therefore, at that time ranks were based on individual scores, which would much more rarely be the same, as they were published to the hundredth percentile (000.00).

7

This is not the first time that a trial court has considered the defendant's manner of interpreting and applying the Rule of Three, particularly as it applies to promotions in the Police Department. In the matter of Bombalicki v. Pastore, 2001 Ct. Sup. 3083 (2001), the trial court considered the Rule of Three and found that the City's interpretation that it could apply the Rule of Three to ranks, as opposed to individuals, could lead to absurd results. By application of the Rule of Three to ranks rather than individuals, where there are many individuals of a particular rank, the result might be that they all be passed over whether they be 2, 200 or 2000 in number at that rank. Further, it became clear on further inspection, that an individual who performed more poorly than many others may have a better prospect of being promoted if he is the only candidate in his rank. That is, when picking of three ranks, the appointing authority can pass over two ranks out of three regardless of the number in that rank. To 'clear a rank out' so that the next rank may be considered, it is more likely that a rank with one individual would be picked if he were the only one in the rank.

Finally, under this system of considering ranks rather than individuals, the trial court in Bombalicki went on to consider the result that this would lead to: that in certain circumstances a candidate would be better situated for promotion if he did more poorly on an examination. This result undermines the very principles that are the bedrock of civil service competitive examinations as the basis for promotion. "It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effectve civil service system is built." Cassella v. Civil Service Commission, 202 Conn. 28, 35, 519 A.2d 67 (1987). "The purpose of these laws is to ensure the appointment of personnel possessed of the qualifications which are necessary for a fit and intelligent

8

discharge of duties pertaining to public office..." Resnick v. Civil Service Commission, 156 Conn. 28, 31, 238 A.2d 391 (1968). The court concurs with the reasoning of the trial court in Bombalicki.

The defendants' interpretation of the language of the Charter does not lead to rational results when applied in very plausible instances. "[C]ompelling principles of statutory construction, however, require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. *Sutton v. Lopes, 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. McCarthy v. Lopes, 479 U.S. 964, 107 S.Ct. 466, 93 L.Ed.2d 410 (1986); Narel v. Liburdi, 185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982).* We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck v. Jacquemin, 196 Conn. 53, 63-64, 491 A.2d 1043 (1985).*" Turner v. Turner, 219 Conn. 703, 712-713, 595 A.2d 297 (1991). It is also inconsistent with case law interpretation of the statute which authorizes the Rule of Three selection process as a part of civil service. "General Statutes Section 7-414 requires that a civil service position be filled from a list of the three candidates ("rule of three") who rank highest in open competitive examination for that position." International BOP, op cit at 13969.

The defendants argue that the plaintiffs' construction of the Rule of Three language unnecessarily interferes with the discretion of the appointing authority in the selection of individuals for promotion. They cite out of state cases for the proposition that competitive examinations by themselves are an insufficient way to determine an officer's fitness for promotion. It would appear that these jurisdictions have not placed as much faith as the State of Connecticut (as seen in statute and case law) in the civil service examination system as a means of assuring the pubic that its public

9

employees are hired and promoted based upon their merit.

The second problem with the defendants' argument is it assumes that the plaintiffs' urge promotion in exam order without any consideration of the Rule of Three. The plaintiffs agree that the Rule of Three is provided for in the Charter and should be applied to the three highest scoring individuals; this provides the appointing authority sufficient discretion to consider other qualities besides the exam results for promotion. What this interpretation does accomplish is the prevention of the appointing authority from having the ability to virtually ignore exam results. The Rule of Three, which allows for selection from the three highest scoring individuals provides the appointing authority the discretion it seeks.    "The rule of three grants a department head the discretion to award a promotional position to any one of the three most qualified candidates. The underlying rationale for the granting of such discretionary power is that the department head should have a limited say in deciding whom he must work with on a daily basis." Hartford v. Board of Mediation & Arbitration, 211 Conn. 7, 17, 557 A.2d 1236 (1989).

The defendants seek to promote as they desire, selecting from many within rounded scores' ranks, in three different ranks. It is this virtually unfettered discretion  that  was sought to be abolished with civil service examinations. Civil Service examinations  "'secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination.'" Id., quoting Ziomek v. Bartimole, 156 Conn. 604, 610, 244 A.2d 380 (1968).

"The civil service law provides for promotion in governmental employment according to

10

merit and fitness ascertained by competitive examination. . . . The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. . . . These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so." (Citations omitted.) *Cassella v. Civil Service Commission, supra, 34-35."* New Haven Firebird Soc'y v. Bd. Of Fire Comm'rs, 32 Conn. App. 585, 592, 630 A.2d 131 (1993). The court finds that the defendants' interpretation of the Charter Rule of Three provision is improper and undermines the most fundamental public policy considerations underlying promotions based upon merit as discerned from civil service examinations.

The plaintiffs also urge the court to find that the defendants' practice of rounding the scores on the civil service exams is improper and should be enjoined. The defendants assert that rounding is a legitimate statistical method of grading. While rounding in itself would seem harmless several characteristics of it must be considered. First, it creates ties on the civil service examination where they do not in reality exist. Second, rounding results, occasionally, in the creation of a position or rank under the defendants' system that did not occur in the actual testing results. For instance, on exhibit B, rank 13 would not have existed without rounding. It also must be noted that rounding did not occur in 1990 but did in 1994 and forward, and the defendants can not point to any regulation, vote, or other authorizing act of the civil service commission or ordinance of the City which would authorize this change that brought in rounding. By itself, without the interpretation of Rule of Three as applying to ranks, it is not clear what effect rounding has or will have beyond creating ties. It

11

would seem ties should still be broken with reference to the candidate who actually achieved a better result of the civil service exam.[3] Rounding with the defendants' interpretation of the Rule of Three discussed infra has produced a result where the appointing authority can select an individual who scored lower than others within the rounded rank.

Based on the evidence before the court on this application for temporary injunction, the court finds that it is likely that the plaintiffs will be successful on the merits of this action. The harm to the plaintiffs if injunctive relief is not issued is that they will lose the ability to be fairly considered for promotion in at least one of the two impending promotions under the existing eligibility list. The harm that might occur if injunctive relief is not granted is that the Police Department will function without officers that the defendant has deemed necessary to the proper operation of the police force. This problem is faced by the Department from time to time, in any case, and individual sergeants are given authority to act as a higher capacity officer for a shift. Indeed, Sgt. John Kelly is often called on to act as lieutenant[4]. The integrity of the promotional practices of the defendants, and their employees and the public's confidence in them is too important a value to sacrifice. The court finds that the equities weigh in favor of the issuance of an injunction.

The court orders :

The defendants are enjoined from promotions off the existing lieutenant eligibility list unless,

---

[3]

The defendants argue that rounding is only as a result of differences of a minimal nature in oral exam results. Oral exams however, if they are given for a purpose must measure valuable skills of police officers who must on a daily basis utilize their oral skills in police duty. That those skills may help them better express themselves in testing is not a result inconsistent with civil service examinations.

[4]

Further, the injunction is structured such that promotions can occur if they are in compliance with this decision.

12

utilizing the Rule of Three, they select from the top three scoring individuals.

So ordered.

By the court,

_____, J.

Lynda B. Munro
Judge of the Superior Court