UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN KELLY and | : | Civil Action No. |
| JAMES KELLY | : | 3:02 CV 01120 (PCD) |
| Plaintiffs, | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| Defendant, | : | SEPTEMBER 1, 2004 |

### DEFENDANT'S
### MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT

Counsel for the defendant respectfully moves pursuant to Rule 60(b) to set aside the default and default judgment entered in this case.

**Reasons for granting the requested relief.**

**1. Grant of this motion will not delay trial, as now scheduled.** As indicated in my recently filed "Motion to Postpone Start of Testimony, But Not Jury Selection," jury selection can proceed as scheduled and trial can proceed this month. Also, despite massive discovery sought by plaintiffs and to which we provided 95 percent, the real issue at trial and the evidence should be very narrow.

**2. There are alternative sanctions available.** We agree that plaintiffs' counsel should be compensated for the time she has had to devote to filing motions to compel and for sanctions. Of course, any such monetary sanction should be assessed against the undersigned. Again, the delinquency is mine alone.

**3. Defendant innocent of counsel's delinquencies.** The defendant is wholly innocent of any delinquencies; they are solely those of the undersigned.

**4. Absence of prejudice.** Plaintiffs will not be prejudiced by having the case

**ORAL ARGUMENT IS REQUESTED**
**TESTIMONY IS NOT REQUIRED**

tried later this month.

**5. Lack of willfulness.** Most of the undersigned outstanding compliance was done long ago.  Also, as I will discuss in detail <u>infra</u>, the undersigned became involved in several unexpectedly unusually lengthy and complex trials, and requiring about a month and a half more than anticipated by the respective attorneys and even the trial judge.

**6. Lack of willfulness.** Most of the undersigned outstanding compliance was done long ago.  Also, as I will discuss in detail <u>infra</u>, the undersigned became involved in several unexpectedly unusually lengthy and complex trials, far lengthier than had been anticipated.

<u>Andrus, et al.</u> v. <u>Grasso, et al.</u>, Superior Court, Judicial District of New Haven, at New Haven, Docket No. CV 96-0392407 S (a case brought by two brothers who had been shot while apparently unarmed and very seriously wounded by a New Haven Police Officer, alleging both unreasonable use of deadly force by the officer and various types of alleged "deliberate indifference" by the New Haven Police Department to constitutional rights).

We had initially anticipated and scheduled a total of no more than three weeks for both jury selection and trial in the <u>Andrus</u> case.  Instead, I spent (A) many weeks of trial preparation, (B) a total of fourteen (14) days of jury selection over the course of more than three weeks, and (C) then nearly five (5) weeks of trial.

Also, several weeks of trial and jury selection in <u>John Doe</u> v. <u>Antonio Lasaga,</u>

et al., Superior Court, Judicial District of New Haven, at New Haven, Docket No. CV 99-0430858 S (alleging defendant Lasaga, a Yale University professor, had molested "John Doe" after Professor Lasaga had become a part time mentor for "John Doe" when the latter was in grade school in New Haven, the New Haven Board of Education being the other defendant and my client).

**7. Meritorious defense.** The claim of retaliation is contradicted.

**First,** the plaintiffs were not chilled in the exercise of their First Amendment rights. Each of the plaintiffs has filed a Complaint with the Connecticut Commission on Human Rights and Opportunities subsequent to the ruling in the State Court.

**Second,** other New Haven Police Officers who have sued about personnel matters were subsequently promoted. 1

**Third,** the plaintiffs were initially bypassed for promotion before they filed the State Court lawsuit which they claim as the motive for the alleged retaliation. 2

---

1    Kelly, et al. v. City of New Haven, et al., Superior Court, Judicial District of New Haven, At New Haven, Docket No. CV00-0444614 (coplaintiffs -- together with the Kelly's -- Aaron Sweeney and Rebecca Sweeney-Burns, both Caucsians); Sonya-Marie Atkinson v. City of New Haven, et al., United States District Court, District of Connecticut, Docket No. 3:97CV01459 (PCD), the plaintiff claimed sexual harassment but was subsequently promoted to Lieutenant upon the recommendation of Chief Wearing; Lisa Fitzgerald v. City of New Haven, et al., U. S. District Court, District of Connecticut, Docket No. 3:99CV612 (GLG), the plaintiff claimed gender discrimination, yet she was subsequently promoted to Sergeant upon the recommendation of Chief Wearing.

2    They were initially bypassed for promotion approximately two and one-half (2-1/2) months before the State Court lawsuit was filed and approximately twenty-two (22) months before this federal lawsuit was filed on June 27, 2002. As such, the plaintiffs cannot logically complain that the Chief did not recommend them in retaliation for having filed a lawsuit that was in fact not filed until after the Chief declined to recommend them.

-3-

It is correct that the Chief declined to recommend the plaintiffs a second time on May 9, 2002 when he recommended two other persons, one a Caucasian and one an African-American. But that demonstrates nothing more than that the Chief was not intimidated into changing his mind by the filing of the State Court lawsuit.

What the plaintiffs are really complaining about is that (1) the Chief was not intimidated into changing his mind by the filing of the State Court lawsuit or by the Court issuance of a temporary injunction, which followed from the lawsuit, and (2) the Chief did not promote either of the plaintiffs even though they had no entitlement (and hence, no due process claim) to be recommended or being promoted.

**Fourth**, contrary to the allegations of the Complaint, the defendant African-American Chief of Police has indeed recommended Caucasians for promotion while at the same time declining to recommend African-Americans.

**Fifth**, contrary to the impression fostered by the Complaint, far more Caucasians than African-Americans were promoted from the Lieutenants' Eligibility List No. 00-16 which gave rise to this controversy: sixteen (16) Caucasians, two (2) African-Americans and one (1) person of mixed race.

**Sixth**, when the Chief decided to not recommend the plaintiffs primarily other Caucasians benefitted and were promoted, not African-Americans.
than had been anticipated.

## More detailed discussion of the issues and law.

**Nature of this case.**  In October 2000 the two plaintiff New Haven Police Sergeants, John Kelly and James Kelly, had been passed over for promotion to

-4-

Lieutenant from New Haven Civil Service Eligibility List No. 00-16. They and a number of other similarly situation Sergeants sued in State Court, in <u>Kelly, et al.</u> v. <u>City of New Haven, et al.</u>, Superior Court, Judicial District of New Haven, At New Haven, Docket No. CV00-0444614.

They claimed that the City of New Haven, the members of the Board of Police Commissioners, Chief Wearing and the Director of Personnel had violated the City Charter and City Civil Service Rules and Regulations by considering more than three individuals on the eligibility list per each vacant Lieutenant position and by "rounding" the scores on that Lieutenant civil service eligibility examination. They claimed this was an improper application of the so-called "Rule of Three." Some of the persons promoted from the applicable civil service eligibility list had scored higher than one or both of the Kelly's, and some had scored lower, but the "Rule of Three" allows persons who scored higher on the eligibility list to be skipped over in certain circumstances.

Plaintiffs also claimed that at least the Chief, who makes promotion recommendations to the Board of Police Commissioners, was racial discrimination. The plaintiffs are Caucasian. The now retired Chief is African-American.

In May 2002, about a month before the Lieutenant's eligibility list was to expire, the Chief recommended two additional persons for promotion, but not the two plaintiffs. One of the intended promotees was a Caucasian male (other than the plaintiffs) and the other an African-American female. The plaintiffs sought a temporary injunction.

On June 11, 2002, after a hearing, the Hon. Lynda B. Munro granted a temporary injunction temporarily preventing the defendants in the State Court case from promoting to the rank of Lieutenant any more eligible persons "unless, utilizing the Rule of Three, they select from the top three scoring individuals," effectively scoring without "rounding" and requiring that if promotions were to be made only three applicants could be considered per vacant position.

The defendants offered no evidence on the issue of race at the hearing on the motion for temporary injunction and chose not to litigate that issue of discrimination at that point.

Judge Munro did not specify who should be promoted to Lieutenant.

Judge Munro's ruling also made no findings regarding the contention of racial motivation.

Accordingly, the Chief then recommended only one person, i.e., the same Caucasian male he had previously recommended, and that person's promotion was approved by the Board of Police Commissioners.

This instant lawsuit thus alleges a violation of the First Amendment to the Constitution of the United States and Title 42, United States Code, Section 1983, and Article First, Section 8 of the Constitution of the State of Connecticut, alleging retaliation for the filing of the State Court lawsuit and the seeking and obtaining the temporary injunction.

In a subsequent ruling the Hon. Patty Jenkins Pittman granted a declaratory judgment and permanent injunction. "Accordingly, this court enters a Declaratory

-6-

Judgment declaring the herein described practice of the defendants of 1) rounding off scores so that tie scores are then created, 2) grouping candidates with tie scores into one group as though they all had actually received the identical score on the exam, and 3) promoting from among any of those candidaes whose scores fall into the top three groups of scores, as opposed to promoting only one among three candidates who have scored highest on the examination, violates the City Charter and the Civil Service Rules of the City of New Haven; and such practice is hereby permanently enjoined." Memorandum of Decision, January 9, 2004, at page 15.

Judge Pittman's ruling specifically declined to find an improper motive. The plaintiffs have sought to prove that cronyism, nepotism, and outright racism are behind the defendants' desire to increase the discretion of the appointing authority though [sic] rounding off of scores and selections from groupings of tied candidates. The court declines to make a finding as to the motive of the defendants. . . . ." Memorandum of Decision, January 9, 2004, at page 13.

An appeal is pending.

**Relevant law.** There are several widely accepted factors to be considered in context and appropriately balanced with other factors in deciding this motion: (1) whether granting the motion would prejudice the adversary; (2) whether a meritorious defense is presented, (3) whether the client or his attorney has erred, (4) whether the client is a private and apparently financially substantial person or entity, (5) whether

-7-

the default was willful, and (6) whether the Court' schedule will be adversely impacted. 3

---

3      Securities and Exchange Commissioner v. McNulty, 137 F.3d 732, 738-739 2d Cir. 1998) (the defaulted person, a sophisticated business man who together with others had raised $78 million dollars through various public and private offerings of securities in connection with several corporations controlled by a codefendant, was accused with the others of illegally diverting monies); Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-244 (2d Cir. 1994) (commercial banks); American Alliance Insurance Co. v. Eagle Insurance Co., 92 F.3d 57, 60-61 (2d Cir. 1996) (property insurance company) (also, the filing mistake was by a clerk working for in-house counsel); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (failure of attorney and plaintiff, a lawyer himself, to prosecute; also, obstructionism during discovery); Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978) (per curiam), cert. denied, 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979) (private plaintiff; and the most prominent delinquency of counsel was ten (10) month delay in moving to vacate dismissal; counsel also misstated actions of the Trial Judge's law clerk); United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976) ("Cirami I") (private truck transportion company; delinquency of attorney wholly unexplained; federal income tax deficiencies of nearly $300,000 failure of attorney to file opposition to motion for summary judgment). See also, Flax v. Koegel, et al., 504 F.2d 702 (2d Cir. motion for summary judgment). See also, Flax v. Koegel, et al., 504 F.2d 702 (2d Cir. 1974) (corporation and its president accused of fraud in the sale of corporate debentures); Gucci America, Incorporated, Guess?, Inc. v. Gold Center Jewelry, et al., 158 F.2d 631 (2d Cir. 1998) (jewelry companies) (client directly responsible, not attorney).

Respectfully submitted,

_____
Martin S. Echter
Deputy Corporation Counsel
165 Church Street
New Haven, CT 06510
Phone: (203) 946-7958
Fax: (203) 946-7942
Federal Bar No. ct 07596
**Pager: 1-860-590-4432**

Certificate of Service

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and HAND-DELIVERED to Attorney Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, CT 06510, this 2nd day of September, 2004.

_____
Martin S. Echter