## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN KELLY and | : | Civil Action No. |
| JAMES KELLY | : | 3:02 CV 01120 (PCD) |
|      Plaintiffs, | : | |
|   V. | : | |
| | : | |
| MELVIN WEARING | : | |
|      Defendant, | : | SEPTEMBER 1, 2004 |

## NOTICE OF FILING OF ATTACHED
## RULINGS IN THE STATE COURT <u>KELLY</u> CASE
## FILED IN SUPPORT OF
## DEFENDANT'S
## <u>MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT</u>

Respectfully submitted,

Martin S. Echter
Deputy Corporation Counsel
165 Church Street
New Haven, CT 06510
Phone: (203) 946-7958
Fax: (203) 946-7942
Federal Bar No. ct 07596
**Pager: 1-860-590-4432**

### Certificate of Service

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and HAND-DELIVERED to Attorney Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, CT 06510, this day of September, 2004.

Martin S. Echter

CVOO O444614                    :              SUPERIOR COURT

JOHN KELLY, ET AL               :              J.D. OF NEW HAVEN

V.                              :              AT NEW HAVEN

CITY OF NEW HAVEN, ET AL        :              JUNE 11, 2002

Memorandum of Decision

Before the court is an application for temporary injunction, brought by the plaintiffs James

W. Kelly and John P. Kelly[1]. They are both police officers in the City of New Haven. They seek

a temporary injunction enjoining the defendants, City of New Haven, Melvin Wearing, the Chief

of Police in New Haven, Tina Burgett, the City's Human Resources Director and the Board of Police

Commissioners and each of its members [all collectively referred to as the "City" hereinafter], from

going forward with promotions that they claim are illegal, in violation of the Charter of the City of

New Haven.

The matter originally came to court on or about October 27, 2000, when all of the named

plaintiffs sought an ex parte injunction to block the impending promotion of 18 sergeants off the

lieutenant eligibility list. No ex parte relief was granted. When the matter was in court for a

hearing, those promotions had already occurred. The parties entered into an agreement which

provided that the City would give the plaintiffs three weeks notice of impending promotions. Such

notice was given and the plaintiffs James W. Kelly and John P. Kelly have therefore brought their

application for temporary injunction to the court. On May 20, 2002, a hearing was held on the

---

[1] There are two other plaintiffs, Aaron Sweeney and Rebecca Sweeney-Burns who are not seeking the relief
sought by the two Kelly plaintiffs in the application currently before the Court.

1

plaintiff's application for temporary injunction.

The court finds the following facts from the evidence introduced at the hearing.

The City of New Haven, in its Charter and by ordinance, makes provision that the promotion of police officers (among other of its employees) be accomplished in accordance with civil service provisions. A civil service exam was held for the position of lieutenant on April 10, 2000 and May 17, 2000. The promotional list, that is the certified list of those who passed the exam was subsequently posted; it expires on June 20, 2002. Thereafter, in order for there to be further promotions to lieutenant, a new civil service exam would have to be held. The promotions off of the certified civil service exam are to be made by the Board of Police Commissioners, which receives the recommendations of the Chief of Police.

On the exam at issue, the scores of the candidates were rounded to the nearest whole number. Exam scores above .5 were rounded up; exam scores at .5 and below were rounded down. A review of the actual scores, without rounding, discloses that there were no ties between candidates. Once the scores were rounded, there were numerous ties. It is not clear when this rounding practice commenced. The evidence discloses that there was no rounding in 1990 but that on a March, 1994 eligibility list, rounding had commenced. In practice, once the City rounds the scores, it treats all scores rounded to the same score as equal and treats all the candidates who have that score as being of one rank. For instance, in the exam at issue, the plaintiffs before the court each had their score rounded by the City to 83, as did several other candidates. The effect is that the plaintiffs were two among four candidates at rank 7. The certified eligibility list at issue has seventeen ranks among 36 candidates, none of whom actually achieved the same score on the civil service examination. The

2

ranking runs from one to seventeen, such that, for example, the individual at rank one scored higher than those in succeeding ranks.

From the certified eligibility list, the City of New Haven Charter provides, "[w]henever said board shall have adopted rules relative to the appointment or promotion of any class of officials, no appointments or promotions within such class shall be made **except from those applicants with the three highest scores** of those who shall be passed the examination with a score of at least seventy percentum and have received a certificate to that effect from said board . . . . (emphasis added)." (Sec. 160). The City has construed this provision to mean that it can select from the three highest ranks, explaining that each rank is a separate score.

This practice of selecting those who shall be promoted from the three highest ranks has meant that an individual who did not have one of the three highest scores can be selected for the promotion. It is this practice that is challenged by the plaintiffs in this application for temporary injunction. Presently, the Chief of Police, Melvin Wearing has announced his intention to submit for preemption the names of Sgt. Joseph Streeto and Sgt. Diane Langston.

As a result of previous rounds of promotions (with reference to Exhibit B) off of the eligibility roster, every candidate ranked above the two plaintiffs Kelly have been promoted, except Sgt. Edward Kendal. Sgt Kendall has retired. Therefore, as the list presently stands the eligible candidates are in the following listed order and rank as assigned to them, plaintiff Sgt. James W. Kelly at rank 7, Plaintiff Sgt. James P. Kelly at rank 7, Sgt. Kevin J. Emery at rank 11, Sgt. Diane

3

Street at rank 11 and Sgt. Joseph Streeto at rank 11.[2] The plaintiffs claim that the intended promotion of Streeto and Langston will violate the City Charter and therefore should be enjoined.

The Defendants assert that these intended promotions are in accord with a proper application of the Rule of Three under the City Charter. The relief that the plaintiffs are seeking is an injunction preventing the defendants from applying this construction of the Rule of Three to the next two proposed promotions. The Plaintiffs are aware that they are not entitled to a court order granting either of them a promotion. It is their goal to be fairly considered for promotion; This can only be achieved, they argue, under what they perceive to be a proper reading of the Charter. If the Rule of Three is meant to allow the three highest scoring individuals to be considered for promotion, then the plaintiffs argue that the first promotion must go to either one of them or Langston. If Langston is selected, as one would assume since her name is being submitted for promotion presently, then the second promotion must go to either one of the two Kelly plaintiffs or Kevin J. Emery. It is their prayer for relief that an injunction be issued to prevent the defendants from issuing promotions that do not fairly consider the three highest scoring individuals.

I. Law and Discussion

The elements that the plaintiffs must satisfy to be successful in an application for temporary injunction are well settled. "The party seeking injunctive relief must first demonstrate that: (1) he has no adequate legal remedy; (2) he would suffer irreparable injury absent a stay; (3) he is likely

---

2.

All of the candidates on the list from Hassett to Blanchard, from ranks 8, 9 and 10, were previously promoted. To reach Hassett through Blanchard, the appointing authority had to go around Kendall and both Kelly's. If the Rule of Three had been applied to the three highest individual's scores and Kendall had not yet retired, not all of these individuals would have been promoted.

4

to prevail on the merits; and (4) the balance of the equities favors granting relief." <u>Waterbury</u> <u>Teachers</u> <u>Assn.</u> v. <u>Freedom of Information Commission</u>, 230 Conn. 441, 446, 645 A.2d 978 (1994).

The first two elements recited above are easily met by the plaintiffs. If injunctive relief is not granted, the defendants will in all likelihood proceed with their plans for the promotions of Langston and Streeto. It will mean that in considering one of these promotions, they will have had to embrace their notion that the Rule of Three means the selection from among the three highest ranks, not the three highest ranked individuals. Absent the court, at a later date, revoking promotions, an even more extreme injunctive remedy, there is no remedy for failure to being fairly considered, that is, being considered under the interpretation of the Rule of Three as the plaintiffs assert it should be construed. There is no adequate remedy for the plaintiffs to achieve this fair consideration for promotion other than to ask a court to order the defendants to do so. Money damages are not available. The prospective loss of not fairly being considered for promotion can not be compensated for in money terms. Therefore, if the plaintiffs are likely to prevail on the merits and if the equities favor the granting of relief, equitable relief would be the only remedy appropriate.

### A. Likelihood of success on the merits

The plaintiffs and the defendants agree that the interpretation of the language of the Charter that provides, "no...promotions shall be made except from those applicants with the three highest scores" is the pivotal issue in this matter. The court must in construing this language consider its plain language.

"A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.)

5

*Bridgeport Firefighters Assn. v. City of Bridgeport, 48 Conn. App., 667, 670, (1998); see Murchison v. Civil Service Commission, 234 Conn. 35, 45, 660 A.2d 850 (1995).* "In seeking to discern that intent, we look to the words of the statute itself. . . " (Internal quotation marks omitted.) Id. "When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance. . . Where there is ambiguity in the statute, however, we ascertain the actual intent by looking to the language of the statute itself, its legislative history, the circumstances surrounding its enactment and its purpose"; *Bridgeport Firefighters Assn. v. City of Bridgeport, supra, 48 Conn. App. 670;* as well as "to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) *Murchison v. Civil Service Commission of the City of Waterbury, supra, 234 Conn. 45.* When promotions in office or public situation are "regulated by law, all promotions must be made in accordance with that law. . . Such provisions exist where a merit system has been established in the municipal service. . . When such rules exist, promotions must be made in accordance with them, otherwise they are invalid." *3 E. McQuillin. Municipal Corporations (3d Ed. Rev. 1990) § 12.131, p. 598.* "The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) *Gorman Construction Co. Inc. v. Planning & Zoning Commission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994).* The trial court reviews the commission's action "only to determine whether it was unreasonable, arbitrary or illegal." *Schwartz v. Planning & Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).* In seeking injunctive relief, therefore, the plaintiff bears the burden of demonstrating that the town, by the actions of the board of police commissioners, acted improperly. *Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988).* International BOP v. Town of Windsor Locks, 1998 Ct. Sup. 11153, 11158-9(1998).

In considering the meaning of the language, the court must first consider it within the context of the statutory mandates. The Legislature has established the authority for the institution and application of civil service by municipalities. The enabling authority for the Rule of Three is found here:

> Sec. 7-414. Classified service; eligible list; promotion.
>
> The board shall, from the returns or reports of the tests, prepare a register or eligible list, for each grade or class of positions in the classified service, of the persons who attain such minimum mark as may be fixed by the board for any part of such test as fixed by the rules of such board and who are otherwise eligible.

6

Such persons shall take rank as candidates upon such register or list in the order of their relative excellence as determined by test, without reference to priority of time of test. The board shall provide by its rules for promotions in such classified service on a basis of ascertained merit in service, seniority in service and special test. **The board shall submit to the appointing power for each promotion the names of not more than three applicants having the highest rating.** The method of testing and the rules governing the same and the method of certifying shall, as far as possible, be the same as provided for applicants for original appointment. (1949 Rev., S. 876.) (Emphasis added.)

The statute contemplates a Rule of Three selecting the three individuals with the highest rating, having in order of their relative excellence as determined by the test. The Charter language speaks of the three highest scores. The City argues that the language the Charter, which replaced language that stated, "those applicants, not exceeding three, who shall stand highest on the list." particularly in light of discussions reflected in the minutes of the Charter Commission, reflects an intent to consider the scores as ranked, not the individual scores.

The court must consider this argument in the context of the exam process at the time. In 1991, when the Charter Revision Commission was meeting it does not appear that civil service examination results were rounded. The evidence presented discloses that in 1990 examination results were not rounded. The defendants offered into evidence an exhibit showing rounding occurred as early as 1994. Therefore, the court infers that when the Charter amendments were considered in 1991 (which eventually led to their passage and effective date some time in 1993), the exam results were not rounded. Therefore, at that time ranks were based on individual scores, which would much more rarely be the same, as they were published to the hundredth percentile (000.00).

7

This is not the first time that a trial court has considered the defendant's manner of interpreting and applying the Rule of Three, particularly as it applies to promotions in the Police Department. In the matter of Bombalicki v. Pastore, 2001 Ct. Sup. 3083 (2001), the trial court considered the Rule of Three and found that the City's interpretation that it could apply the Rule of Three to ranks, as opposed to individuals, could lead to absurd results. By application of the Rule of Three to ranks rather than individuals, where there are many individuals of a particular rank, the result might be that they all be passed over whether they be 2, 200 or 2000 in number at that rank. Further, it became clear on further inspection, that an individual who performed more poorly than many others may have a better prospect of being promoted if he is the only candidate in his rank. That is, when picking of three ranks, the appointing authority can pass over two ranks out of three regardless of the number in that rank. To 'clear a rank out' so that the next rank may be considered, it is more likely that a rank with one individual would be picked if he were the only one in the rank.

Finally, under this system of considering ranks rather than individuals, the trial court in Bombalicki went on to consider the result that this would lead to: that in certain circumstances a candidate would be better situated for promotion if he did more poorly on an examination. This result undermines the very principles that are the bedrock of civil service competitive examinations as the basis for promotion. "It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effectve civil service system is built." Cassella v. Civil Service Commission, 202 Conn. 28, 35, 519 A.2d 67 (1987). "The purpose of these laws is to ensure the appointment of personnel possessed of the qualifications which are necessary for a fit and intelligent

8

discharge of duties pertaining to public office..." <u>Resnick</u> v. <u>Civil Service Commission</u>, 156 Conn. 28, 31, 238 A.2d 391 (1968). The court concurs with the reasoning of the trial court in <u>Bombalicki</u>.

The defendants' interpretation of the language of the Charter does not lead to rational results when applied in very plausible instances. "[C]ompelling principles of statutory construction, however, require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. *Sutton v. Lopes, 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. McCarthy v. Lopes, 479 U.S. 964, 107 S.Ct. 466, 93 L.Ed.2d 410 (1986); Narel v. Liburdi, 185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. Peck v. Jacquemin, 196 Conn. 53, 63-64, 491 A.2d 1043 (1985)." <u>Turner</u> v. <u>Turner</u>, 219 Conn. 703, 712-713, 595 A.2d 297 (1991). It is also inconsistent with case law interpretation of the statute which authorizes the Rule of Three selection process as a part of civil service. "General Statutes Section 7-414 requires that a civil service position be filled from a list of the three candidates ("rule of three") who rank highest in open competitive examination for that position." <u>International BOP</u>, op cit at 13969.

The defendants argue that the plaintiffs' construction of the Rule of Three language unnecessarily interferes with the discretion of the appointing authority in the selection of individuals for promotion. They cite out of state cases for the proposition that competitive examinations by themselves are an insufficient way to determine an officer's fitness for promotion. It would appear that these jurisdictions have not placed as much faith as the State of Connecticut (as seen in statute and case law) in the civil service examination system as a means of assuring the pubic that its public

9

employees are hired and promoted based upon their merit.

The second problem with the defendants' argument is it assumes that the plaintiffs' urge promotion in exam order without any consideration of the Rule of Three. The plaintiffs agree that the Rule of Three is provided for in the Charter and should be applied to the three highest scoring individuals; this provides the appointing authority sufficient discretion to consider other qualities besides the exam results for promotion. What this interpretation does accomplish is the prevention of the appointing authority from having the ability to virtually ignore exam results. The Rule of Three, which allows for selection from the three highest scoring individuals provides the appointing authority the discretion it seeks.     "The rule of three grants a department head the discretion to award a promotional position to any one of the three most qualified candidates. The underlying rationale for the granting of such discretionary power is that the department head should have a limited say in deciding whom he must work with on a daily basis." Hartford v. Board of Mediation & Arbitration, 211 Conn. 7, 17, 557 A.2d 1236 (1989).

The defendants seek to promote as they desire, selecting from many within rounded scores' ranks, in three different ranks. It is this virtually unfettered discretion   that  was sought to be abolished with civil service examinations. Civil Service examinations   "'secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination.'" Id., quoting Ziomek v. Bartimole, 156 Conn. 604, 610, 244 A.2d 380 (1968).

"The civil service law provides for promotion in governmental employment according to

10

merit and fitness ascertained by competitive examination. . . . The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. . . . These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so." (Citations omitted.) *Cassella v. Civil Service Commission, supra, 34-35."* New Haven Firebird Soc'y v. Bd. Of Fire Comm'rs, 32 Conn. App. 585, 592, 630 A.2d 131 (1993). The court finds that the defendants' interpretation of the Charter Rule of Three provision is improper and undermines the most fundamental public policy considerations underlying promotions based upon merit as discerned from civil service examinations.

The plaintiffs also urge the court to find that the defendants' practice of rounding the scores on the civil service exams is improper and should be enjoined. The defendants assert that rounding is a legitimate statistical method of grading. While rounding in itself would seem harmless several characteristics of it must be considered. First, it creates ties on the civil service examination where they do not in reality exist. Second, rounding results, occasionally, in the creation of a position or rank under the defendants' system that did not occur in the actual testing results. For instance, on exhibit B, rank 13 would not have existed without rounding. It also must be noted that rounding did not occur in 1990 but did in 1994 and forward, and the defendants can not point to any regulation, vote, or other authorizing act of the civil service commission or ordinance of the City which would authorize this change that brought in rounding. By itself, without the interpretation of Rule of Three as applying to ranks, it is not clear what effect rounding has or will have beyond creating ties. It

11

would seem ties should still be broken with reference to the candidate who actually achieved a better result of the civil service exam.[3] Rounding with the defendants' interpretation of the Rule of Three discussed infra has produced a result where the appointing authority can select an individual who scored lower than others within the rounded rank.

Based on the evidence before the court on this application for temporary injunction, the court finds that it is likely that the plaintiffs will be successful on the merits of this action. The harm to the plaintiffs if injunctive relief is not issued is that they will lose the ability to be fairly considered for promotion in at least one of the two impending promotions under the existing eligibility list. The harm that might occur if injunctive relief is not granted is that the Police Department will function without officers that the defendant has deemed necessary to the proper operation of the police force. This problem is faced by the Department from time to time, in any case, and individual sergeants are given authority to act as a higher capacity officer for a shift. Indeed, Sgt. John Kelly is often called on to act as lieutenant[4]. The integrity of the promotional practices of the defendants, and their employees and the public's confidence in them is too important a value to sacrifice. The court finds that the equities weigh in favor of the issuance of an injunction.

The court orders :

The defendants are enjoined from promotions off the existing lieutenant eligibility list unless,

---

[3] The defendants argue that rounding is only as a result of differences of a minimal nature in oral exam results. Oral exams however, if they are given for a purpose must measure valuable skills of police officers who must on a daily basis utilize their oral skills in police duty. That those skills may help them better express themselves in testing is not a result inconsistent with civil service examinations.

[4] Further, the injunction is structured such that promotions can occur if they are in compliance with this decision.

12

utilizing the Rule of Three, they select from the top three scoring individuals.

So ordered.

By the court,

_____, J.

Lynda B. Munro
Judge of the Superior Court

13

CV 00 0444614

JOHN KELLY

VS.                                          SUPERIOR COURT

CITY OF NEW HAVEN


CV 01 0454311

PETER BECKWITH                               JUDICIAL DISTRICT OF

VS.

MELVIN WEARING                               NEW HAVEN


CV 03 0477275

PETER BECKWITH                               JANUARY 9, 2004

VS.

CITY OF NEW HAVEN


## MEMORANDUM OF DECISION

The plaintiffs in these consolidated cases challenge certain promotional practices of the defendant City of New Haven and its Police Department.  The challenged practices consist of the City rounding off the scores on promotional civil service exams to the nearest higher or lower whole number, and of considering for promotion all those individuals whose scores fall into the three highest groups of scores, rather than considering only those three individuals who scored highest on the examination.

Judicial District of New Haven
**SUPERIOR COURT**
**FILED**

JAN 0 9 2003

**CHIEF CLERK'S OFFICE**

The plaintiffs claim that these practices contravene the Charter and the Civil Service Rules of the City of New Haven. The defendants argue that a change in the City Charter in 1992 permitted and in fact compelled the City to consider for promotion all those candidates whose scores fall into the three highest groups of scores on the civil service promotional exam. Moreover, they defend the use of rounded-off numerical scores, instead of numbered scores that contain fractions, as a well-recognized practice in the scoring of employment and standardized tests, such that it is an administrative convenience that eliminates inconsequential scoring differences between candidates.

The court finds that the practice of the City of 1) rounding off scores so that tie scores are then created, 2) grouping candidates with tie scores into one group as though they all had actually received the identical score on the exam, and 3) promoting from among any of those candidates whose scores fall into the top three groups of scores, violates the City Charter and the Civil Service Rules.

## PROCEDURAL BACKGROUND

In each action, the named plaintiffs, all New Haven police officers, have alleged that they sat for and passed a promotional examination for a higher rank, and that but for the defendant's practices of which they complain, each of them at some point would have been in a pool of only three individuals whose names would have been forwarded to the appointing authority for promotion only from among those three named individuals. Rather, their names were in each instance one among more than three, and often one among more than a dozen, candidates from among whom the appointing authority chose individuals for promotion. They allege that this

2

unlawfully diluted their potential for promotion. In all of the files the plaintiffs have moved for temporary and permanent injunctive relief requiring the City to consider for promotion only the three individuals whose actual scores – not rounded scores – on the exam are the three highest; and for a declaratory judgment declaring the current practices of the City to be unlawful.

Notice pursuant to the request for declaratory judgment was ordered by the court to be given to any persons whose rights might be affected by such a declaration by delivery to the President of the New Haven Police Union, Local 530, collective bargaining representative for all police officers who might be affected by any orders of the court, by mail and delivery to certain specific affected individuals on August 7, 2003, and by publication in the New Haven Register newspaper on July 21, 2003. The court finds that notice of the proposed declaratory judgment has been accomplished as ordered and is adequate.

## FACTS COMMON TO ALL OF THE PLAINTIFFS

The promotion to a higher rank in the Police Department of the City of New Haven is accomplished by a qualified employee of a lower rank sitting for and passing a civil service examination. The New Haven Civil Service Commission oversees and certifies the examination process. In practice, the Commission contracts with private individuals and companies to devise and administer the actual examinations. To be eligible for promotion, a candidate must pass the examination with a minimum score of 70% on a scale of 100. The examination consists of a written component and an oral component. Those scoring too low on the written component are not invited to sit for the later oral component. The two scores are combined, one often given greater weight than the other (for example, the written part weighted at 60% and the oral part

3

40% ) to yield the candidate's total score. The actual score is usually expressed as a number into the hundredths of a percent (00.00). Tie scores are rare. Only the names of persons who score 70% or above appear on the Eligible List.

Once the Eligible List has been certified by the Civil Service Commission, it has no more than a two year life. That is, the individuals on the list remain eligible for appointment to the higher rank for no longer than two years from the certified date, after which the list expires and no promotions to that rank can be made until a new exam procedure has occurred and a new list certified. See New Haven Civil Service Rules and Regulations, Rule IV, Sec. 3. If an individual is not reached for promotion before the expiration of a list, or has been passed over for promotion, that individual can retake the exam the next time it is offered and attempt to make the Eligible List once again.

The Chief of Police determines whom he wishes to promote from among the top three scorers on the Eligible List and sends the name or names to the Board of Police Commissioners. The Board is the appointing authority, but as a practical matter the Board routinely approves the recommendations of the Chief. An appointment cannot be made until an opening in the rank occurs. See New Haven Civil Service Rules and Regulations, Rule VI. Commonly, multiple appointments to a higher rank are made at one time, usually when multiple openings occur simultaneously because some slots are not filled when they first occur.

At issue in these lawsuits is the following language of the current City Charter, Sec. 160, the wording of which has been in effect since 1993:

> . . . [N]o appointments or promotions within such class shall be made except from those applicants *with the three highest scores* of those who shall have passed the examination with a score of at least seventy percentum and have

4

received a certificate to that effect from said board. . . .

The previous version of the City Charter, Sec. 191, had contained similar but not identical language:

> . . . [N]o appointments or promotions within such class shall be made except from those applicants, *not exceeding three, who shall stand highest on the list* of those who shall have passed an examination of at least seventy per centum and have received a certificate to that effect from said board. . . .

Also at issue is the language of the current New Haven Civil Service Rules and Regulations, Rule III, Section 9:

> The examination grades shall be based on a scale of one hundred points. No appointments or promotions within any class shall be made except from those applicants, not exceeding three, who shall stand highest on the list of those who shall have passed an examination of at least seventy percentum and have received a certificate to that effect from the Civil Service Board. . . .

FACTS OF CV 00 0444614: <u>KELLY VS. NEW HAVEN</u>

The first of these lawsuits was commenced by plaintiffs John P. Kelly, James W. Kelly, Aaron Sweeney and Rebecca Sweeney-Burns with a return date of November 21, 2000. The former two plaintiffs were on Eligible List 00-16 for promotion to Lieutenant, and the latter two were on the Eligible List 98-65 for promotion to Detective.[1] All four plaintiffs were at that time one of the three top-scoring candidates on these respective lists. As promotions from each list appeared imminent, the plaintiffs moved for a temporary injunction to prohibit the defendant from denying them fair consideration for promotion, that is, by refusing to consider them among an exclusive group of only three persons from among whom the next promoted individual would

_____

[1]Sweeney-Burns was also on Eligible List 00-31 for promotion to Sergeant, a separate rank from that of Detective.

5

be chosen. Before a hearing was held, the defendant announced its intention to promote

Sweeney to Detective and Sweeney-Burns to Sergeant, so that they withdrew their request for

temporary injunctive relief.

At that time, there were no openings for Lieutenant, the promotion for which the Kellys

were eligible. The defendant agreed that in the event of future openings, it would give three

weeks notice to the plaintiffs of any intention to make promotions, so that they could once again

seek relief from this court if they considered themselves aggrieved. Such notice was given in the

Spring of 2002, and the court (Munro, J.) conducted an evidentiary hearing on the renewed

motion of the plaintiffs James Kelly and John Kelly for a temporary injunction. The court

granted an injunction on June 11, 2002, finding the following facts, which this court adopts here,

*verbatim:*[2]

> On the exam at issue, the scores of the candidates were rounded to the nearest
> whole number. Exam scores above .5 were rounded up; exam scores at .5 and
> below were rounded down. A review of the actual scores, without rounding,
> discloses that there were no ties between candidates. Once the scores were
> rounded, there were numerous ties. It is not clear when this rounding practice
> commenced. The evidence discloses that there was no rounding in 1990 but that
> on a March, 1994 eligibility list, rounding had commenced. In practice once the
> City rounds the scores, it treats all scores rounded to the same score as equal and
> treats all the candidates who have that score as being of one rank. For instance, in
> the exam at issue, the plaintiffs before the court each had their score rounded by
> the City to 83, as did several other candidates. The effect is that the plaintiffs
> were two among four candidates at rank 7. The certified eligibility list at issue
> has seventeen ranks among 36 candidates, none of whom actually achieved the
> same score on the civil service examination. The ranking runs from one to
> seventeen, such that, for example, the individual at rank one scored higher than
> those in succeeding ranks. . . .

---

[2]Judge Munro refers in her decision to "ranks" as representing score groups; the
undersigned prefers to use the term "rank" to refer only to the promotional titles at
issue, and the term "score group" to refer to the grouping of candidates whose scores are
deemed to be identical.

This practice of selecting those who shall be promoted from the three highest ranks has meant that an individual who did not have one of the three highest scores can be selected for the promotion. It is this practice that is challenged by the plaintiffs in this application for temporary injunction. Presently, the Chief of Police, Melvin Wearing has announced his intention to submit for [promotion] the names of Sgt. Joseph Streeto and Sgt. Diane Langston.

As a result of previous rounds of promotions off of the eligibility roster, every candidate ranked above the two plaintiffs Kelly have been promoted, except Sgt. Edward Kendall. Sgt. Kendall has retired. Therefore, as the list presently stands the eligible candidates are in the following listed order and rank as assigned to them [with the actual or raw score in parenthesis next to the rank]: plaintiff Sgt James W. Kelly at rank 7 (83.30), plaintiff Sgt. [John] P. Kelly at rank 7 (83.00), Sgt. Kevin Emery at rank 11 (78.10), Sgt. Diane Langston at rank 11 (78.02), and Sgt. Joseph Streeto at rank 11 (78.39). The plaintiffs claim that the intended promotion of Streeto and Langston will violate the City Charter and therefore should be enjoined.

The court entered an order that enjoined the defendants from making any promotions off the existing lieutenant eligibility list unless the appointing authority selected from the top three scoring individuals. Thereafter, although two openings were available, the defendants elected to make only one promotion from the Eligible List 00-16, that of Joseph Streeto, the individual on the list who then held the third highest score. The defendants did not make the intended promotion of Diane Langston who held the fifth highest score.

As for the Detective list 98-65 on which Aaron Sweeney and Rebecca Sweeney-Burns were listed, the same practices were utilized by the City – rounding, score grouping, and promoting based on group score – to initially pass over Sweeney and Sweeney-Burns. On the examination for promotion to police detective, one hundred six people passed the exam with a score above 70%. Aaron Sweeney achieved an actual or raw score of 89.33 for the thirteenth highest score and Sweeney-Burns a raw score of 85.77 for the thirty-seventh highest score.

There were six sets of two persons whose actual or raw scores were tied. Once the

7

defendants rounded the scores of the one hundred six candidates, twenty-two sets of ties were created, and every score group from 77 to 91 had at least five persons tied within it. Sweeney's score was rounded down to 89 and he became tied with eight other persons, only two of whom actually scored higher than he did on the exam. All of those nine persons were deemed to be in score group 6. Sweeney-Burns's score was rounded up to 86 and she became tied with seven other persons in score group 9, of whom she scored higher than four. The effect of such rounding and score grouping was that once the five highest scoring individuals on the exam had been promoted (those whose scores were rounded to 92 and above), the next three groups of highest scores – 91, 89, and 88 -- contained twenty people from among whom a promotion could be made.

In an even more peculiar twist, the promoting authority, in its interpretation of the Rule of Three, would sometimes choose to skip all or nearly all candidates in an entire score group to reach those with lower scores for promotion. This occurred with Eligible List 98-65 in the months before the plaintiffs filed their lawsuit. In the first round of promotions from List 98-65, thirty-two people were promoted at once. Among those promoted were all those in score group 10, whose rounded scores were 85. Passed over for promotion in the first round were eleven people who all scored higher on the exam than those in score group 10: Officers Sweeney who scored 89.33, D'Amato who scored 89.15, Harkins who scored 89.15, Wasilewski who scored 88.88, Wortz who scored 88.93, Esposito who scored 85.69, Kenney who scored 86.27, Morrone who scored 86.07, Prinz who scored 86.03, Quinn who scored 86.49, and Sweeney-Burns who scored 85.77; all passed over in favor of the promotion of Officers Augustine-Daye, Burrell, Daniels, Rivera, and Vazquez, who all scored between 84.64 and 85.24.

8

FACTS OF CV 01 0454311: <u>BECKWITH VS. WEARING</u>

The second action was commenced by plaintiff Peter Beckwith, with a return date of September 11, 2001. Beckwith sat for and passed the examination in September and October of 2000 for promotion to Sergeant and was certified on Eligible List 00-31. His actual or raw score was 84.7632. Of the 149 persons who passed the exam with a score of 70 or above, Beckwith had the twentieth highest score. Rebecca Sweeney-Burns, plaintiff in the previous action, sat for this exam as well and achieved the twelfth highest score with 86.4828. Among the 149 persons who passed this exam, there were five pairs of naturally occurring tie scores, of which the highest was a tie at 81.7471%. However once the defendants rounded off the scores to the nearest whole percentage number, the defendants created twenty groups of tied scores, of which the largest contained twenty-two tied individuals (at 77%). Beckwith became "tied" in sixth place at the rounded off score of 85 with six other individuals. Sweeney-Burns became tied at fifth place at the rounded off score of 86 with three other individuals.

In the first round of promotions from this list, thirty-one individuals were promoted, including at least eighteen person who scored lower on the examination than did Beckwith. Thirteen persons with scores of 82.5% and above, including Beckwith, were passed over during the first promotional round in favor of at least ten persons who had lower scores. If promotions had been made only from among the three highest-scoring candidates, none of the ten lower scoring persons could have been promoted until at least eleven promotions had been made from those higher-scoring candidates who were passed over.

9

FACTS OF CV 03 047727: <u>BECKWITH AND BURNS VS. NEW HAVEN</u>

The third action was commenced by Peter Beckwith and Shawn Burns in May 2003, with a return date of June 17, 2003. They sat for and passed the examination for promotion to Detective in January and February of 2003 and were certified on Eligible List 03-02. Beckwith's raw score was 82.08, and Burns's raw score was 82.83. Of the 47 persons who passed the exam with a score of 70% or above, Beckwith had the fourteenth highest score and Burns had the eleventh highest. There was only one pair of natural tie scores among the 47 persons who passed the exam. After the defendants rounded the scores, there were 14 sets of ties.

In the first round of promotions from this list, Chief Wearing announced his intention to promote the ten highest scoring persons, and then skip Burns at number 11, promote the candidate who scored 12th highest, and then skip the 13th, 14th (Beckwith), 15th highest scoring candidates, promote the 16th highest scorer, skip the 17th and 18th highest scorers, and promote the 19th highest scoring candidate. Beckwith and Burns applied for temporary injunctive relief to prevent any promotions below the 14th highest scoring candidate until at least one among the 11th, 13th, and 14th highest scoring candidate was promoted first. The court heard evidence and reviewed documents, one of which was an opinion of the Corporation Counsel indicating that the court's previous order and interpretation of the law in <u>Kelly vs. New Haven</u>, then as now still pending, was erroneous and need not be followed in making promotions to Detective from the 2003 Eligible List. Not surprisingly, the court consistently applied its previous analysis to this part of the litigation and promptly entered an injunction on May 9, 2003, prohibiting the proposed promotion of the candidates who scored 16th and 19th. On August 26, 2003, Shawn Burns withdrew as a plaintiff in this case.

10

## DISCUSSION OF THE FACTS AND THE LAW

The defendants have attempted to show that their recent examination scoring practices are all matters of administrative convenience that are common in educational and vocational testing. The court does not credit the evidence of the City that, in the administration of competitive examinations for civil service purposes, rounding of multiple decimal point scores to the nearest whole number is justified as either an administrative convenience or as a valid way to eliminate insignificant discrepancies among exam candidates. Nor do the data or cases in which all candidates are deemed successful who score above a certain score (such as on bar examinations or on standardized tests such as the SAT) have any persuasive value here. When a statute calls for a competitive examination through which candidates are to be selected based on their achievement on the examination *relative to one another*, the examining authority is not free to manipulate the data to create artificial categories of scores to increase discretion of the appointing authority. The City must report the scores according to the percent achieved on the test instrument, without rounding; rank candidates relative to the actual score each has achieved on the examination; and appoint or promote as indicated from among the three highest scoring candidates.

As for the process of rounding off scores, the court finds that the only purpose served by that practice here, and in fact the reason it was begun at all, is to create the artificial tie scores that allow for the selection of any candidate whose score falls in the three highest scoring groups. The practice of rounding off scores is one component of the City's manipulation of the examination results in order to artificially and unlawfully increase the discretion of the appointing authority beyond the bounds of the Charter and Civil Service Rules, and indeed

11

beyond the rationale for the Civil Service system.

The City also advances the argument that the slight change in the wording of the applicable section in the City Charter, as part of a wholesale revision and renumbering of the Charter proposed in 1992, compels the court to adopt a different interpretation of the disputed section. The City argues that the wording change, from "applicants, *not exceeding three, who shall stand highest on the list*" to "applicants *with the three highest scores*" creates a conflict in the legislative enactments which cannot reasonably be reconciled and also indicates an affirmative intention of the legislative body to alter the meaning of the former enactment. The City cites <u>New Haven Water Co. v. Town of North Branford</u>, 174 Conn. 556, 565 (1978), for the former proposition, and <u>Quarry Knoll II Corp. v. Planning and Zoning Commission</u>, 256 Conn. 674, 732-33 ((2001) for the latter.

This court finds the two enactments not to be in conflict at all, however. When both are given their ordinary and common sense meaning, with the salutary purpose of the civil service system – to hire and promote based on merit – as a background, the two provisions simply do not conflict with one another. Only under the City's patently absurd interpretation of the 1993 Charter provision do the two provisions conflict. Moreover, there is no credible evidence that any change in meaning was intended by the Charter Revision of 1992. As further evidence that no change in meaning or interpretation was compelled by the Charter revision, the New Haven Civil Service Commission did not enact a change of its own Rules and Regulations on the subject of examination grading in response to the slightly different Charter language. Also, persuasively, Judge Munro pointed out in her decision regarding the temporary injunction in <u>Kelly v. New Haven</u> that the provision of the Connecticut General Statutes that enables

12

municipalities to enact civil service systems speaks of "candidates . . . in order of their relative excellence as determined by the test," and the submission to the appointing authority of "the names of not more than three applicants having the highest rating." Conn. Gen. Stat. §7-414.

The plaintiffs have sought to prove that cronyism, nepotism, and outright racism are behind the defendants' desire to increase the discretion of the appointing authority though rounding off of scores and selections from groupings of tied candidates. The court declines to make a finding as to the motive of the defendants. Rather than drawing conclusions about the good faith or bad faith of the city in adopting this bizarre set of promotional practices, what controls the result here are the language and purpose of the Civil Service regulations and the City Charter which authorize a system of hiring and advancement in city service based on the selection of one among the three persons, not one among seven or twelve or twenty, who have demonstrated the highest achievement on a competitive examination.

This court fully adopts the analysis and rationale of courts who have previously considered the very practices at issue here – the unfortunate manipulation of the civil service regulations by these defendants: Judge Blue in <u>Bombalicki v. Pastore</u>, 2001 Ct. Sup. 3083 (2001), and Judge Munro in her decision on the temporary injunction in <u>Kelly v. New Haven</u>, *supra*.

The court, along with Judge Blue and Judge Munro, relies on the obvious and clearly articulated language of the statutes and rules involved, cited earlier in this memorandum. Among the well-established principles of statutory construction to be followed are that a court must construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. See <u>Sutton v. Lopes</u>, 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. <u>McCarthy v.</u>

13

Lopes, 479 U.S. 964, 107 S.Ct. 466, 93 L.Ed.2d 410 (1986). Also the court must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297 (1991).

The idea that the Civil Service Rules, originally enacted to limit the discretion of the appointing authority to select a candidate for reasons other than merit, ought to be parsed in such a way to expand the discretion of the appointing authority to choose from among upward of forty or more candidates for each opening is an absurd interpretation which this court will not adopt in the face of the language of the Charter and the Civil Service Rules and the important purpose of the civil service system.

> We have long recognized the purpose and importance of [civil service] examinations . . . The object of providing for civil service examinations is to secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination. The civil service law provides for promotion in governmental employment according to merit and fitness ascertained by competitive examination. Resnick v. Civil Service Commission, 156 Conn. 28, 30, 238 A.2d 391 (1968); State ex rel. McNamara v. Civil Service Commission, 128 Conn. 585, 588, 24 A.2d 846 (1942). [internal citations omitted].

Cassella v. Civil Service Commission, 202 Conn. 28, 34-35, 519 A.2d 67 (1987). As long as the City chooses to have a competitive Civil Service system, the City must adhere to the letter and spirit of its statutes and rules that selection for promotion be based on the relative achievement of candidates on the required competitive examination.

14

CONCLUSION

Accordingly, this court enters a Declaratory Judgment declaring the herein described practice of the defendants of 1) rounding off scores so that tie scores are then created, 2) grouping candidates with tie scores into one group as though they all had actually received the identical score on the exam, and 3) promoting from among any of those candidates whose scores fall into the top three groups of scores, as opposed to promoting only one among three candidates who have scored highest on the examination, violates the City Charter and the Civil Service Rules of the City of New Haven; and such practice is hereby permanently enjoined.

The court directs counsel for the plaintiff to promptly draft an order to this effect for each of the above files, submit such drafts to counsel for the defendants for approval as to form only, and submit such final drafts to the court for signature.

IT IS SO ORDERED.

_____
Patty Jenkins Pittman, Judge

15