UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN KELLY AND<br>JAMES KELLY | CIVIL NO. 3:02CV1120 (PCD) |
| Plaintiffs, | |
| V. | |
| MELVIN WEARING, | September 16, 2004 |
| Defendant | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND JUDGMENT OF DEFAULT**

I  **INTRODUCTION**

For the second time defendant has filed an untimely motion to set aside a judgment in this action. This time, the motion was filed on September 2, 2004 in the midst of jury selection by defense counsel who arrived for jury selection forty minutes late and commenced thrusting sheafs of paper at plaintiffs' counsel as she was in the middle of studying the juror information sheets.[1] Since plaintiffs' counsel's foremost duty is to her clients, she did not interrupt her preparation for the jury selection, which was shortly to begin, in order to read defendant's

**ORAL ARGUMENT REQUESTED**

---

[1] Per this Court's earlier order, counsel were to arrive for jury selection at 9:00 a.m. Defendant's counsel, Attorney Martin Echter, arrived at approximately 9:40 a.m. armed with, among other filings, a motion to set aside the judgment.

papers; nor did the Court, already in session and attending to the presence of numerous lawyers and parties also present for jury selection in their cases, interrupt the proceedings in order to pay mind to defendant's last-second motion.[2] Accordingly, the parties proceeded with jury selection. A jury of eight was empaneled, sworn and, pursuant to the scheduling requests of the parties, informed to return for the start of evidence on Monday, September 20, 2004. The judgment sought to be set aside was entered long ago on April 27, 2004. Plaintiffs' motion for default which proceeded it went unopposed by defendant. Once a default entered, plaintiff filed a motion for judgment upon the default, a motion which too was unopposed by defendant. From April, 2004 until 9:45 a.m. on September 3, 2004, defendant filed no pleading and did absolutely nothing. Indeed, even when the parties were first notified that jury selection was scheduled for September 3, 2004, defendant did nothing. Instead, he caused the parties, his opponent and the court to proceed to pick a jury and now expects this court blithely to abort everything, reopen this case (which would include the necessity of discovery among other delays) and start from square one.

---

[2] Moreover, per longstanding rule, parties are afforded 21 days to respond to motions, see Local Rule 7(a), and it is beyond understanding why defense counsel chose to file such motion in the midst of jury selection. Although the undersigned is entitled to 21 days to respond, she has had to work extra hours to prepare an opposition lest defense counsel succeed in hampering her preparation for trial.

2

Moreover, defense counsel makes a misrepresentation (or at the very least is flatly incorrect) when he argues that there will be no prejudice to plaintiffs if the motion were granted and implies that this case can be tried on the issue of <u>liability and damages</u> before the very same jury selected on September 2, 2004. Quite to the contrary, since defendant was in default, and since the issue of liability was adjudged by the entry of judgment back in April of 2004, the undersigned counsel did not for those very reasons conduct the additional discovery needed on the issue of liability, including the depositions of the defendant and at least four other witnesses, along with motions to compel disclosure of documents defendant failed to deliver. Thus, were this Court to grant this motion, this case could not go forward at all, since the undersigned counsel cannot possibly try this case on the issue of liability without this discovery and without another minimum 100 hours of time needed to sort through thousands of potential trial exhibits and pursuing additional evidence which becomes apparent from the depositions and additional written discovery.

For the reasons which follow, the plaintiffs respectfully urge this Court to deny this defendant still another generosity, especially since, if defendant and his counsel were to make an extraordinary request for still another indulgence, they certainly should have asked for it back in April of 2004 and not 5 months later and after a jury was empaneled. The plaintiffs John P. Kelly and James Kelly have endured more than their fair burden of delays and have a right to resolution of their claims without the inevitable and lengthy delays that would ensue if

3

defendant's motion were granted.

## II. ARGUMENT

### A. This Case Can Not Be Tried on the Issue of Liability Before the Jury Selected on September 2, 2004 Since, Due to the Longstanding Judgment in Plaintiffs' Favor, and this Court's April 27, 2004 Order That the Case Proceed to Trial on the Issue of Damages, Plaintiffs' Counsel Accordingly Did Not Conduct Necessary Discovery on the Issue of Liability.

Reopening this case at this late stage would require the cancellation of the trial and the dismissal of the empaneled jurors. Not only do the plaintiffs and the undersigned counsel not have time to prepare for a trial on liability before the existing jury but lack the necessary evidence to proceed. The simple reason for this is that defendant has been a state of default for most of the lengthy course of this litigation. With judgment, for the second time, entering in April of 2004 (and with defendant seemingly accepting that judgment by failing to do anything in response to it), plaintiffs' counsel did not start taking depositions and filing additional motions to compel defendant's compliance with outstanding discovery requests which sought evidence on the issue of liability.

The delinquencies in this case, over the course of two years and two months, is the most egregious the undersigned has ever experienced in seventeen years of practice. Countless

4

1. This action was commenced on June 27, 2002. Defense counsel filed an appearance (albeit untimely) on August 2, 2002. Defense counsel moved for an extension of time to answer the complaint to August 30, 2002 and although the motion was granted, defendant failed thereafter to file an answer;

2. Defendant ignored the complaint entirely (including his Local Rule 38 obligations) for five months. Plaintiffs accordingly moved for the entry of default on November 26, 2002. Defendant ignored the motion. Accordingly a default entered against defendant on December 5, 2002.

3. Instead of promptly doing something about the default defendant did nothing for a month and eventually filed, on January 3, 2003, a Motion to Set Aside Default. On February 14, 2003, the Court denied the Motion to Set Aside Default in a four-page ruling in which the Court found the defendant's delinquencies to be "deliberate and intentional" and further found defense counsel's excuse for ignoring the action to be "disingenuous" and "not credible". See Ruling on Defendant's Motion to Set Aside Default dated February 13, 2003, recorded February 14, 2003 at pp. 2-3. Defendant failed to file a timely motion for reconsideration of that ruling.[3] Instead, defendant remained in a state of default for over a month and then on March 14, 2003, filed another motion to vacate the judgment, this time citing a host of other excuses not contained in the first motion. Plaintiffs opposed this motion on, among other grounds, the fact that the rules do not permit the refiling of a motion already adjudicated and that the proper vehicle was the timely filing of a motion for reconsideration which deadline the defendant allowed to expire.

4. In the wake of the Court's initial refusal to set aside the default in February of 2003, the Court, after granting judgment, ordered the

---

[3] Motions for Reconsideration of any ruling must be filed within 10 days. See Local Rule 7(c).

6

parties to comply with Parts A and B of the Trial Preparation Order. Plaintiff's counsel went to the trouble of complying with Part A of the order only to see the default judgment set aside. Thus, all of the Part A compliance work was for naught and an unproductive waste of time.

5. Notwithstanding these procedural irregularities, the Court entertained defendant's second motion on its merits and granted it. The Court noted that plaintiffs had suffered a lengthy delay but observed that "in the interest of justice" the Court would allow the defendant "*a reasonable chance to be heard on the merits*" See Ruling of March 28, 2003 at p. 2. The Court also imposed sanctions on defendant's counsel in the amount of $1000.00.

6. Notwithstanding this generous break, which the Court was under no obligation to grant defendant persisted to fail to meet deadlines and obligations with utter disregard of the rights for the plaintiffs.

7. Plaintiffs served upon the defendant a set of discovery requests under date of October 10, 2003 with compliance due on or before November 10, 2003. In addition, pursuant to a Rule 30 (b) (6) Notice of Deposition and a Request for Documents, defense counsel, on behalf of the City of New Haven, was to produce an appropriate city official together with numerous documents at a deposition scheduled for November 11, 2003. At the last second, plaintiffs' counsel was notified that no official would appear and defendant failed to comply with the discovery requests. Defendant and his counsel failed for months to respond to the requests thus necessitating still another motion. On January 26, 2004, plaintiff's filed a Motion to Compel and For Sanctions and in same, laid out the history of defendant's intransigence.

8. On February 27, 2004, this Court granted plaintiffs' Motion to Compel and for Costs, warning defendant to comply fully with outstanding discovery requests by no later than 5:00 p.m. on February 27, 2004. This Court further sanctioned defense counsel

7

again, this time in the amount of $300.00. The $300.00 sanction represented compensation for only one-fourth of this counsel's time thus, plaintiffs' counsel had to absorb the loss associated with uncompensated time expended in connection with defendant's failings.

9. Despite this Court's expressed order of compliance by 5:00 p.m. on February 27, 2004, defendant and his counsel again failed to heed the order. On March 4, 2004, plaintiffs were forced to file still another motion, this time requesting an order of contempt of court or in the alternative, judgment of default. Defendant ignored the motion and did not oppose it.

10. On March 26, 2004, the Court granted the motion, again entered a default against defendant and further ordered plaintiffs to move for judgment on the default on or before April 26, 2004 or face dismissal of their action for failure to prosecute. See Ruling on Pending Motion dated March 26, 2004, recorded March 29, 2004.

11. On April 1, 2004, plaintiff filed a Motion for Judgment by Default and for Trial on the Issue of Damages. Once again, defendant ignored this motion as well.

12. Accordingly, on April 27, 2004, the Court, noting defendant's failure to oppose the motion, granted it. Judgment entered against the defendant and the Court further ordered that, "[t]his case will be scheduled on the Court's next jury selection calendar". See Ruling on Plaintiffs' Motion for Default Judgment dated April 27, 2004, recorded April 28, 2004.

13. Consistent with defendant's pattern in this case, defendant completely ignored this Court's April 27, 2004 ruling. He did not file a timely Motion for Reconsideration nor did he do anything from April of 2004 until the very moment of jury selection on September 2, 2004.

8

With judgment on the issue of liability having entered in favor of the plaintiffs back in April of 2004, the undersigned counsel accordingly did not conduct any further discovery on the issue of liability. Plaintiffs' counsel did not take the deposition of the defendant nor that of any other individuals. Indeed, the undersigned did not take any depositions as the case was over with except for the hearing in damages. Moreover, while defendant did eventually turn over numerous documents, defendant failed to turn over all requested documents. Some of the documents defendant turned over contained redactions of needed information. Once again, because the issue of liability was adjudged, plaintiffs' counsel did not undertake any further activity in this regard, such as another motion to compel. See Affidavit of Karen Lee Torre, appended hereto as Exhibit A.

### C.  Defendant Has Failed to Offer a Justification for the Grant of The Extraordinary Relief He Requests.

Had defendant and his counsel timely opposed plaintiffs' April 2004 Motions for Default and For Judgment, they would have been hard-pressed then to advance reasons why this Court should relieve them of the default judgment, especially given the history and the fact that the Court previously gave them a break by setting aside the first default and judgment. When defendant received the first generosity, this Court, in reversing its earlier ruling denying a motion to set aside the default, decided under the circumstances to give defendant "a reasonable chance" to defend the case on its merits. Having received what was undoubtedly a good break,

9

defendant responded by persisting to engage in various defaults and deficiencies, conduct defendant must have known would be at his peril. Notwithstanding this, defendant continued to ignore the action and blatantly disobeyed this Court's expressed order to comply with all outstanding discovery by a date and time certain.

Defendant compounded all its previous failings by ignoring the April 2004 Motion for Entry of Default, ignoring plaintiffs' later Motion for Judgment upon the Default, and then, perhaps most shocking, ignored the fact that judgment again entered appear five months later in the midst of jury selection expecting everyone to drop everything and absolve him again.

This Court initially refused to vacate the first judgment, finding that defense counsel's stated excuses were disingenuous and without merit. Nonetheless, this Court reversed itself and gave defendant and his counsel one last chance to litigate the case on its merits. Rather than jumping at the chance to get the case back on track, defendant relapsed into the same pattern and caused his opponent and the plaintiffs to expend a great deal of time and preparation for a hearing in damages, including the selection of jurors, without any conscious understanding of the trouble, inconvenience and expense caused to all.

Defense counsel Martin Echter advances the same excuses that he has advanced before and indeed advances before virtually every judge in this district in justification of similar failings in other cases on this Court's docket. But Attorney Echter, however, is not the only counsel of record in this case. Attorney Thomas W. Ude, Jr. also is counsel of record in this case. It was

10

Attorney Ude who filed the first unsuccessful motion to set aside the first judgment entered in 2003. In that case, it was Attorney Ude who advanced a number of excuses for the failing. Attorney Echter later signed the supplemental (and successful) motion to set aside the first judgment.

Unlike the undersigned counsel who is a solo practitioner, Attorney Ude presides over a relatively large public law firm with numerous lawyers and a host of support staff. Since Attorney Ude also has an appearance in this case, he too was aware of the procedural status of the case throughout. Moreover, the defendant himself cannot at this stage be seen as an innocent victim. Chief Melvin Wearing is no stranger to litigation and has been a named defendant in more than a few civil actions in the state and federal courts. Mr. Wearing must have known about the first default and certainly should have known about the second judgment which entered in April 2004. He is not an unsophisticated layperson but held a high public office which necessarily involves him in litigation. He can thus also be said to have blithely allowed this case to fester in a state of delinquency for over two years without caring much about it since such was to his advantage. Indeed, if either Attorney Ude or Attorney Echter were to claim that Mr. Wearing was ignorant about the state of the case and the failings of his attorneys, Attorneys Ude and Echter would per force be admitting to violating the Rules of Professional Conduct which, among other basic requirements, mandate that attorneys keep their clients apprised of the status of the civil actions in which they are a party.

11

The instant motion by defendant is made pursuant to Rule 60 (b) of the Rules of Civil Procedure. In particular, defendant seeks relief under subsection (1) which allows for relief from a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect". There is obviously no mistake, surprise or inadvertence here. Thus, moving counsel must show "excusable neglect". While there is no doubt neglect, as there has been neglect since June of 2002 when the action was first commenced, it is hardly "excusable", especially where defendant enjoyed relief from an earlier judgment, ignored motions and rulings which resulted in a second judgment in April of 2004 and then ignored that for four months until the midst of jury selection.

As is more clearly set forth in the affidavit of the undersigned counsel attached hereto, a great deal of prejudice will be suffered by the plaintiffs if defendant's instant motion is granted. See Affidavit of Karen Lee Torre attached hereto as Exhibit A.

For the foregoing reasons and those set forth in Exhibit A, the plaintiffs respectfully submit that the motion must be denied.

RESPECTFULLY SUBMITTED,<br>
THE PLAINTIFFS<br>
<br>
BY: _____<br>
KAREN LEE TORRE<br>
#01707<br>
Law Offices of Karen Lee Torre<br>
51 Elm Street<br>
Suite 307<br>
New Haven, CT 06510<br>
(203) 865-5541

12

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed this 16st day of September, 2004, to Martin S. Echter, Esq., Deputy Corporation Counsel, Office of the Corporation Counsel, 165 Church Street, New Haven, Connecticut 06510.

Karen Lee Torre

Case 3:02-cv-01120-PCD   Document 74   Filed 09/16/2004   Page 13 of 18

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN KELLY AND<br>JAMES KELLY | CIVIL NO. 3:02CV1120 (PCD) |
| Plaintiffs, | |
| V. | |
| MELVIN WEARING, | September 16, 2004 |
| Defendant | |

### AFFIDAVIT OF COUNSEL

1. I am plaintiffs' counsel in this action and I submit this affidavit as part of plaintiffs' objection to Defendant's Motion to Set Aside Default and Judgment of Default which was hand-delivered to me during jury selection proceedings on September 2, 2004.

2. Judgment entered in favor of plaintiffs upon defendant's default for the second time in April of 2004 upon defendant's default in March, 2004..

3. Defendant failed to move for reconsideration of this Court's April 27, 2004 Ruling granting judgment to plaintiffs and ordered this case to proceed to trial on the issue of damages.

4. From March, 2004 until I appeared for jury selection on September 2, 2004, during which time the defendant was in default and plaintiffs had judgment in their favor, I did

1

not for these reasons engage in any discovery activity. There was no reason or need to do so since the issue of liability had been adjudged in plaintiffs' favor and defendant, over the course of over four months, allowed the judgment to remain and further, in his pleadings, acknowledged that this case was proceeding to a hearing on damages only.

5.   Had this case proceeded in the normal course to a trial on the issue of liability, I would have taken the deposition of the defendant Melvin Wearing and the deposition of at least four other individuals, among them, witnesses I expect that defendant would call at a trial on the issue of liability. In addition, while defendant, albeit belatedly, disclosed numerous documents pursuant to various of plaintiffs' requests for production of documents, defendant's compliance was hardly complete and the partial compliance was served prior to the April 27, 2004 entry of judgment. For example, some needed personnel documents contained blacked out or redacted material. My cursory review of the compliance also revealed that numerous documents that I expected to be disclosed were not among those delivered. Moreover, a City of New Haven official, who was to appear at a deposition for the purpose of testifying regarding the existence and accuracy of documentary evidence, failed to appear as noticed. This and other failures were the subject of one of plaintiffs' motions to compel and for default and judgment. Indeed, the most recent default judgment entered on account of defendant's failure to abide by this Court's ruling granting plaintiffs' motion to compel and ordering full compliance with all outstanding discovery requests by a date certain. Defendant not only failed to comply with the

request but failed to obey the court's order and judgment entered against him accordingly in April of 2004.

6. Once the parties' counsel were notified that jury selection was to take place on September 2, 2004, I proceeded to expend much time preparing for the hearing in damages including compliance with this court's Trial Preparation Order. All of my work and pleadings in this regard appropriately related to a hearing in damages and not a trial on the issue of liability.

7. Since the jury was selected on September 2, 2004, my time has been devoted exclusively to preparation for this trial which, the Court advised counsel and the jurors, would commence on Monday morning, September 20, 2004. In connection with the scheduled trial, I have spent a great deal of time with the plaintiffs' economist preparing the evidence of damages, conducted an extensive file review and conferences with my client, chose and prepared the order of witnesses, arranged for the appearance of witnesses and further prepared subpoenas duces tecum to witnesses who have been served by a State Marshal and are on notice for them to appear.

8. Dr. Shapiro has also dropped everything in the past week in order to prepare for this trial. I have spent the last several days in trial preparation, including the research and preparation of a jury charge on the issue of damages, the verdict form, exhibit review and preparation and the preparation of the plaintiffs for their testimony. I have also expended time preparing the exhibits for the printer to enlarge for positioning on an easel for the jurors.

3

9. Despite the fact that I would ordinarily enjoy a 21 day period within which to oppose defendant's motion, given the timing of defendant's filing and at the request of the Court, I was caused to prepare an opposition on an abbreviated schedule.

10. Since my primary obligation is to my clients, I could not interrupt trial preparation in order to attend to Attorney Echter's last minute motion. Accordingly, I was forced to work late into the evening last night at home in order to prepare the objection appended hereto. The preparation of the objection required extensive file review in order to include in the objection the lengthy procedural history including defendant's repeated and various delinquencies and defaults.

11. My review of Attorney Echter's motion revealed that he advances the suggestion to this Court that the disruption caused to these proceedings will be minimized because the Court can use the existing jury to try this case on the issue of liabilities as well as damages. For the reasons set forth above, the undersigned counsel and her clients will be severely prejudiced, and Attorney Echter would enjoy an extraordinary advantage, if plaintiffs were forced to try this case on liability before the existing jury. All of my efforts and preparation for trial have been on the issue of damages only. A preparation of a case-in-chief on the issue of liability would require an extensive study of over a thousand documents, the necessity of one or more motions to compel compliance with outstanding discovery requests, and the deposition of a minimum of four witnesses.

4

12. Finally, I presently bill at an hourly rate of $300.00 and none of my time and work is being compensated as the plaintiffs are both police officers who earn modest incomes. Accordingly, they are not compensating for the representation on an hourly rate basis. My office employs software for the recording of time expended by me and for billing purposes. I have expended many, many hours in connection with the preparation for jury selection and the preparation of this trial on the issue of damages. The work has been ongoing up until the moment of preparation of the instant affidavit and has not even been posted into my accounting system.

13. I have kept my clients apprised of the latest procedural issues and I can represent to the Court that both plaintiffs are extremely upset that their case has been pending well over two years with repeated defaults and judgments by the defendant and they are understandably opposed to any further delay in the resolution of this action.

_____
KAREN LEE TORRE

Subscribed and sworn to before me
this 16th day of September, 2004.

_____
CRYSTAL MOFFATT-TSOUKALAS
Notary Public
My commission expires: May 31, 2009

5